UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONALD JAMES<br><br>                Plaintiff,<br><br>v.<br><br>WENDY'S INTERNATIONAL, INC.,<br><br>                Defendant. | No. C05-0021P<br><br>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant's Motion for Summary Judgment. (Dkt. No. 22). Having considered all relevant papers and pleadings and having heard oral argument on this matter, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's discrimination claims. The Court also dismisses Plaintiff's retaliation claims in light of Plaintiff's withdrawal of those claims at oral argument.

**BACKGROUND**

Plaintiff Donald James started working for Defendant Wendy's International, Inc. in 1989. Mr. James is African-American. Throughout the course of his employment, Mr. James received a number of wage increases, bonuses, and promotional opportunities. He served as shift manager, assistant manager, manager, and again assistant manager.

Order - 1

However, Mr. James' job performance at Wendy's was not all positive. He received approximately twenty written disciplinary warnings (see EEOC Record of Interview Attached to the Original Complaint), four of which were for cash violations in 2001-2003. On December 31, 2002, he received a final written warning for a cash shortage of ninety dollars. Mr. James signed the warnings acknowledging his mistakes. On November 6, 2003, Mr. James was terminated for a cash shortage of forty-one dollars and other cash control violations. He was replaced by a female Hispanic employee, Ms. Juanita Saunders.

According to Wendy's operations guidelines, every shift has a cash manager known as the "Operations Leader" whose duties include cash control, food safety, customer satisfaction, and safety. The Operations Leader ensures that cash handling procedures are strictly followed, which includes hourly removing of monies from the registers and depositing of cash receipts in the bank. The Operations Leader must also ensure that the time the money is removed from the cash register and the amount removed is accurately recorded on cash control envelopes.

On November 6, 2003, Mr. James was the Operations Leader on the night shift at Wendy's Rainier store. It is undisputed Mr. James failed to follow the company's financial procedures and a cash shortage of forty-one dollars occurred. Mr. James argues that he was short-staffed and therefore could not fully perform his duties as an Operations Leader. However, Mr. David Davenport (another manager) was called in by Mr. James to alleviate the employee shortage at the store. Mr. James also argues that the forty-one dollars may have been taken by the day Shift Supervisor Digna Noyola to buy three pizzas for the restaurant crew. Wendy's investigated the claim that Ms. Noyola took the money but found no corroboration.

Mr. James filed a grievance challenging his termination with the Equal Employment Opportunity Commission ( "EEOC"). The EEOC was unable to conclude that Wendy's had discriminated against Mr. James, but issued a right-to-sue letter. Mr. James then filed a discrimination and retaliation claim against Wendy's in this Court. He alleges that his termination was racially motivated and in retaliation for his involvement in a discrimination action against

Order - 2

Wendy's by another employee. In 1999, Mr. James provided a statement on behalf of Charles Moss who had a complaint of racial discrimination against Wendy's. The case was resolved in 2000 without Wendy's acknowledging any liability. During oral argument, Plaintiff's counsel withdrew Mr. James' retaliation claims against Wendy's. Therefore, the Court will only address Mr. James' remaining claims for race discrimination in this order.

Wendy's claims that Mr. James' discharge was not based on racial discrimination but on his failure to follow the company's financial policies, despite repeated written warnings. For those reasons, Wendy's has moved for summary judgment on the discrimination claim.

## ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" exists where the evidence before the court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party. A mere "scintilla" of evidence is not enough to defeat summary judgment. Instead, there must be evidence upon which a jury could reasonably find in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).

A fact is "material" if it hinges on the substantive law at issue and if it may affect the outcome of the case. Id. at 248. The moving party must first make a prima facie showing that summary judgment is appropriate under Rule 56. The moving party can meet its burden by pointing out the absence of evidence of a genuine issue of material fact. Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). When the moving party meets its burden, the burden then shifts to the non-moving party to show by affidavit or otherwise that a genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 586 (1986). The evidence of the non-moving party will be believed as true, all doubts will be resolved in favor of the non-moving party, and all reasonable

inferences will be drawn in the non-moving party's favor. <u>Hunt v. Cromartie</u>, 526 U.S. 541, 550-55 (1999).

**B.     Racial Discrimination Claim**

Mr. James' claims of race discrimination arise under Title VII of the Civil Rights Act of 1964. Title VII prohibits employers from discriminating against any individual with respect to race. 42 U.S.C. § 2000e-2(a) (1) (2005). The proper legal framework for determining whether Mr. James' claim should survive summary judgment is based on the burden-shifting mechanism set out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S.792, 802 (1973). Under <u>McDonnell Douglas</u>, Mr. James must first establish a prima facie case of racial discrimination. <u>Id.</u> at 802. He may make a prima facie case by showing (1) he belongs to a protected class, (2) he performed his job satisfactorily, (3) he was subjected to an adverse employment action, and (4) similarly situated employees who were not African-American were treated more favorably. <u>Cornwell v.Electra Cent. Credit Union</u>, 439 F.3d 1018,1028 (9th Cir. 2006). <u>See also</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993).

If Mr. James succeeds in establishing a prima facie case, the burden of production shifts to Wendy's to articulate a legitimate, nondiscriminatory reason for terminating Mr. James' employment. <u>McDonnell Douglas</u>, 411 U.S. at 802. If Wendy's does so, Mr. James must demonstrate that Wendy's articulated reason is a pretext for unlawful discrimination by "either directly persuading the court that a discriminatory reason more likely motivated the employer by showing that the employer's proffered explanation is unworthy of credence." <u>Chuang v. Univ. of Cal. Davis</u>, 225 F.3d 1115, 1124 (9th Cir. 2000). Mr. James' evidence must be both specific and substantial to overcome the legitimate reasons put forth by Wendy's. <u>Dominguez-Curry v. Nev. Transp. Dep't</u>, 424 F.3d 1027, 1038 (9th Cir. 2005).

Order - 4

### 1. Protected Class

It is undisputed that Mr. James belongs to a protected class because he is an African-American. Title VII applies to any racial group. Griggs v. Duke Power Company, 401 U.S. 424, 434 (1971).

### 2. Job Performance

Direct evidence presented by Wendy's indicates that Mr. James' job performance was not satisfactory. Mr. James received approximately twenty disciplinary written notices, four of which were cash violations prior to his termination. (See EEOC Record of Interview Attached to the Original Complaint and Gaviria Decl., Ex.7). According to Wendy's Policy Bulletin and Cash Control Policy, any violation of cash control policies is subject to a disciplinary action. (See Pacheco Decl., Ex. 2 and 3). Mr. James was aware of the policy because he signed a document acknowledging that he had read it.

It is undisputed that Mr. James violated his responsibility as a cash manager repeatedly prior to his termination and that he received written warnings for these violations. Two times he failed to deposit cash receipts in the bank in timely manner and on the third time, there was a cash shortage of ninety dollars. (See Pacheco Decl., Ex. 4, 5 and 7). Wendy's discipline policy generally requires only two written warnings before termination, but Mr. James was given a third chance to correct his mistakes. When Mr. James violated cash control policies the fourth time, he was terminated. Mr. James suggests that the written warnings were racially motivated. However, the evidence indicates that from November 10, 2000 through November 11, 2003, eight Caucasians were issued disciplinary notices related to cash handling vis-a-vis two African-Americans. (Dkt. No. 33).

Mr. James also questions his written warnings because they were issued after he provided a statement against Wendy's in a discrimination claim. However, Mr. James had previous write-ups before he provided that statement. Additionally, he never challenged the written warnings, but instead signed them in acknowledgment of his mistakes. Furthermore,

Order - 5

similar warnings were issued to other employees who were not involved in the protected action.

### 3. Adverse Action

It is undisputed that Mr. James was subjected to an adverse action when he was terminated.

### 4. More Favorable Treatment

Mr. James must present evidence to show that similarly-situated employees who were not African-American were treated more favorably than him. In the instant case, Mr. James may meet this burden by showing that non-African American employees who have committed similar violations were treated differently. <u>Leong v. Potter</u>, 347 F.3d 1117, 1124 (9th Cir. 2003)

Mr. James claims that the forty-one dollar shortage that led to his termination was taken by Ms. Noyola and that she was treated more favorably than him because she was not disciplined. (<u>See</u> Plaintiff's Response at 5). He claims that Ms. Noyola took approximately forty dollars from the register to buy pizza. This claim is apparently based on what Mr. James was told by another manager, Ms. Clara Fay. Ms. Fay informed Mr. James that "she had stopped by the store earlier, that she had witnessed – she don't know [sic] if Digna used her money, but she [had] seen [pizza] at the register. . . ." (James' Dep. at 148). Wendy's carried out an investigation about the alleged incident and concluded that the claim was unjustified. Mr. James has failed to present any evidence to contradict the outcome of Wendy's investigation. His claim is based on conclusory averments, speculation, and unfounded self-serving statements which cannot be used to defeat a summary judgment motion. <u>In re Sunset Bay Assoc.</u>, 944 F.2d 1503 1513 (9th Cir. 1991); <u>Delange v. Dutra Const. Co.</u>, 183 F.3d 916 (9th Cir. 1999); <u>In re Kaypro</u>, 218 F.3d 1070, 1075 (9th Cir. 2000).

Furthermore, Mr. James argues that the violation of the cash policy would not have occurred had he been provided with enough staff to run the store. He suggests that short

Order - 6

staffing was a "set up" for his failure.  (See James' Dep. at 199).  However, Mr. James does not provide any evidence, direct, or otherwise, to show that his shifts were always short staffed in contrast with other managers.  Instead, the facts indicate that shortage of staff was brought about by other factors.  For example, on November 6, 2003, one of the managers (Mr. Paul LeBeau) was on vacation, and a week before the incident, another employee quit.  By Mr. James' admission, if "Paul was not on vacation this would not have happened."  Id. The fact that Mr. James' shift was short-staffed because an employee was on a scheduled vacation and another had quit does not raise an inference of racial discrimination.

In addition, Mr. James contends that one of the managers on duty that night, Mr. David Davenport, was treated more favorably because he was not disciplined for the same incident that led to Mr. James' termination.  However, Mr. Davenport was not the Operations Leader on the shift and was not responsible for cash control.  Mr. James also suggests that Mr. Davenport was responsible for inadequate staffing on November 6, 2003 and should have been disciplined for that reason.  However, Mr. James does not provide any evidence to show that Mr. Davenport was the one responsible to fill the vacancy created as a result of another employee quitting.  Furthermore, there is no evidence that Mr. Davenport violated cash control policies even once, let alone four times.

Therefore, the Court finds that Plaintiff has not made a prima facie case that similarly situated non-African Americans employees were treated more favorably than him.

**5.     Pretext**

Because Mr. James has failed to establish a prima facie case for summary judgment purposes, he does not benefit from the presumption of impermissible discrimination.  Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002).  Even if Mr. James had established a prima facie case of discrimination, Wendy's has articulated a legitimate non-discriminatory reason for his terminations, namely his repeated violations of Wendy's cash control policies following

Order - 7

written warnings.  <u>Wallis v. J.R.Simplot Co.</u>, 26 F.3d 885, 889 (9th Cir. 1994).  Mr. James has not offered evidence suggesting that this reason for his termination is pretexual.

## CONCLUSION

As discussed above, Mr. James has not presented evidence sufficient to make a prima facie case of discrimination.  Therefore, the Court GRANTS Defendant's motion for summary judgment with respect to Plaintiff's claims for race discrimination.  Plaintiff's retaliation claims will also be dismissed in light of Plaintiff's withdrawal of those claims at oral argument.

The clerk is directed to send copies of this order to all counsel of record.

Dated: May 16, 2006.

                                              s/Marsha J. Pechman
                                              Marsha J. Pechman
                                              United States District Judge

Order - 8